# EXHIBIT A



OFFICE OF THE CLERK
SUPERIOR COURT & CA 3

**STATE OF CONNECTICUT**

**SUPREME COURT** JAN 14  AM 9 18
**APPELLATE COURT**

JUDICIAL DISTRICT
DANBURY
STATE OF CONNECTICUT

PAUL S. HARTAN
CHIEF CLERK

231 CAPITOL AVENUE
HARTFORD, CT 06106

CAROLYN C. ZIOGAS
DEPUTY CHIEF CLERK

TEL. (860) 757-2200
FAX (860) 757-2217

January 12, 2016

Re: A.C. 38364

<u>Jane Miller v. Thomas Dunkerton</u>

Dear Counsel:

    Pursuant to §65-1, the Supreme Court has transferred the captioned Appellate Court appeal to itself. The Supreme Court docket number assigned is **S.C. 19621.**
<u>Use only the Supreme Court number on all future filings in this appeal.</u>

    Briefing is in accordance with P.B. 67-1 et seq. Any due dates established in the Appellate Court remain in effect.

    For further information, please see Chapter 67 of the Connecticut Practice Book and the Judicial Branch website.

    The clerk assigned to your case is Susan C. Reeve. This office has no information regarding the reason for transfer; however, if you have other questions concerning this appeal, Attorney Reeve may be reached at **860-757-2224.**

Very truly yours,

Jeanne Dullea
Assistant Clerk

Notice sent: January 12, 2016
Hon. Anthony D. Truglia Jr.
Clerk, JD Danbury, (DBD-CV15-6017272-S)
Cohen & Wolf PC
Chipman Mazzucco Land & Pennarola LLC
pd

| Carl D. Cicchetti | L. Jeanne Dullea | Alan M. Gannuscio | Marina L. Green | Susan C. Reeve | Rene L. Robertson |
|---|---|---|---|---|---|
| Assistant Clerk | Assistant Clerk | Assistant Clerk | Assistant Clerk | Assistant Clerk | Assistant Clerk |
| 860-757-2223 | 860-757-2144 | 860-757-2242 | 860-757-2149 | 860-757-2224 | 860-757-2229 |

# EXHIBIT B

# SUPREME COURT

## OF THE

## STATE OF CONNECTICUT

---

## S.C. 19621

**JANE MILLER,**

PLAINTIFF-APPELLANT,

**v.**

**THOMAS DUNKERTON**

DEFENDANT-APPELLEE,

---

**BRIEF OF PLAINTIFF-APPELLANT JANE MILLER WITH
WITH ATTACHED APPENDIX PART I AND PART II**

---

COUNSEL FOR PLAINTIFF-APPELLANT:

PASTORE & DAILEY LLC
FOUR HIGH RIDGE PARK, THIRD FLOOR
STAMFORD, CT 06905
(203) 658-8454
(203) 348-0852 (FACSIMILE)

TO BE ARGUED ON BEHALF OF
DEFENDANT-APPELLANT BY:

Susan Bysiewicz, Esq.
Juris No. 305389
EMAIL: SBYSIEWICZ@PSDLAW.NET

## TABLE OF CONTENTS

STATEMENT OF ISSUES ............................................................................................ ii

TABLE OF AUTHORITIES........................................................................................... iii

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS AND PROCEEDINGS COMMON TO ALL CLAIMS ........................ 2

STANDARD OF REVIEW COMMON TO ALL CLAIMS ............................................... 6

ARGUMENT .............................................................................................................. 7

    I.   THE PROPER STANDARD TO APPLY IN DETERMINING THE CONSTITUTIONALITY
OF § 9-61 IS STRICT SCRUTINY........................................................................ 7

    II.   THE SUPERIOR COURT ERRED IN HOLDING THAT FORCIBLY DISAFFILIATING MS.
MILLER FROM THE REPUBLICAN PARTY DID NOT IMPERMISSIBLY BURDEN HER
RIGHT TO FREEDOM OF ASSOCIATION UNDER THE FIRST AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION ...................................... 11

    III.   THE TRIAL COURT CLEARLY ERRED IN HOLDING THAT FORCIBLY
DISAFFILIATING PLAINTIFF FROM THE REPUBLICAN PARTY DID NOT IMPERMISSIBLY
BURDEN HER FUNDAMENTAL RIGHT TO VOTE ................................................... 18

CONCLUSION........................................................................................................... 26

APPENDIX .............................................................................................................. Ai

i

## STATEMENT OF ISSUES

I.      Did the Superior Court err when it determined that strict scrutiny was not the correct standard of review to use in determining Plaintiff's claims under the United States Constitution?

Discussion Begins on Page 7

II.     Did the Superior Court err when it held that Defendant's act of removing Plaintiff's name from the rolls of the Republican Party did not impermissibly burden Plaintiff's right to freedom of association under the First and Fourteenth Amendments to the United States Constitution?

Discussion Begins on Page 11

III.    Did the Superior Court err when it held that Defendant's act of removing Plaintiff's name from the rolls of the Republican Party did not impermissibly burden Plaintiff's fundamental right to vote by preventing her from participating in Republican Party primaries and caucuses?

Discussion Begins on Page 18

ii

# TABLE OF AUTHORITIES

**Cases**

*Bendinger v. Ogilvie,*
  335 F. Supp. 572 (N.D. Ill. 1971) ................................................................. 19

*Burdick v. Takushi,*
  504 U.S. 428 (1992)...............................................................7, 8, 9, 22, 25

*Campbell v. Bysiewicz,*
  242 F. Supp. 2d 164 (2003) .................................................................... 12

*Cousins v. Wigoda,*
  419 U.S. 477 (1975)................................................................................. 17

*Dawson v. Delaware,*
  503 U.S. 159 (1991)................................................................................. 11

*Democratic Party of United States v. Wis.,*
  450 U.S. 107 (1981)................................................................................. 17

*Elfbrandt v. Russell,*
  384 U.S. 11, 18 (1966) ........................................................................... 11

*Fand v. Legnard,*
  NO. 31 60 63, 1994 Conn. Super. LEXIS 2722, at *25 (Conn. Super. Ct. Oct. 31,
  1994).......................................................................................................... 10

*Flewellyn v. Hempstead,*
  703 A.2d 1177 (Conn. App. Ct. 1997)................................................... 12

*Gordon v. Exec. Comm. of Democratic Party,*
  335 F. Supp. 166 (D.S.C. 1971)............................................................. 24

*In re Quarles,*
  158 U.S. 532 (1895)................................................................................. 18

*Jalowiec Realty Assocs.,*
  *L.P. v. Planning & Zoning Comm'n,* 278 Conn. 408 (Conn. 2006).................................. 6

*Kiernan v. Borst,*
  126 A.2d 569 (Conn. 1956)....................................................................... 6

*Kusper v. Pontikes,*
  414 U.S. 51 (1973) ................................................................ 8, 9, 12, 20

*Mandanici v. Fischer,*
  Superior Court, judicial District of Fairfield, Docket No. 21 36 18
  (February 22, 1984, *Burdon, J*) (10 Conn. Law Trib.  July 2, 1984).............................. 11

*Mazzucco v. Verderame,*
  NO. CV 96-0382136-S, 1996 Conn. Super. LEXIS 752, at *5-6
  (Conn. Super. Ct. Mar. 22, 1996)........................................................ 7, 10, 14, 23

*Nader v. Schaffer,*
  417 F. Supp. 837 (D. Conn. 1976)................................................... 16, 18

*Nagler v. Stiles,*
  343 F. Supp. 415 (D.N.J. 1972) ................................................................................. 8
*Reynolds v. Sims,*
  377 U.S. 533 (1964) .................................................................................................. 19
*Rosario v. Rockefeller,*
  410 U.S. 752 (1973) .................................................................................................. 16
*Smith v. Allwright,*
  321 U.S. 649 (1944) ............................................................................................ 11, 20
*Tashjian v. Republican Party,*
  479 U.S. 208 (1986) .................................................................... 15, 16, 17, 18, 20
*Timmons v. Twin Cities Area New Party,*
  520 U.S. 351 (1997) .................................................................................................. 19
*United States Term Limits v. Thornton,*
  514 U.S. 779 (1995) .................................................................................................. 22
*United States v. Classic,*
  313 U.S. 299 (1941) ............................................................................ 18, 20, 22
*Wesberry v. Sanders,*
  376 U.S. 1 (1964) ...................................................................................................... 18
*Williams v. Rhodes,*
  393 U.S. 23 (1968) .................................................................................................... 25
*Yale v. Curvin,*
  345 F. Supp. 447 (D.R.I. 1972) ............................................................... 8, 19, 23
*Zapata v. Burns,*
  529 A.2d 1276 (Conn. 1987) .................................................................................. 19

**Statutes**

C.G.S. § 9-60 ...................................................................... 1, 3, 4, 9, 13, 24, 25, 26
C.G.S. § 9-61 ........................................ 1, 3, 7, 8, 9, 10, 11, 12, 13, 14, 20, 22, 23, 25
C.G.S. § 9-63 .............................................................................................................. 4
C.G.S. § 9-379 ......................................................................................................... 22
C.G.S. § 9-431 ......................................................................................................... 21
C.G.S. § 65-1 ............................................................................................................. 5

**Constitutional Provisions**

U.S. CONST. art. I, § 2 ............................................................................................ 18

## INTRODUCTION

Ms. Miller brought this action to challenge the constitutionality of Connecticut statutes which have been used by the Defendants to deprive her of her ability to participate in the fundamental civil process of our republic—the election of our leaders. This basic right to cast a vote and participate in the election of our representatives and leaders is protected by federal and state statute, and the constitutions of both the State of Connecticut and the United States of America. As a direct result of the actions of the defendant, Ms. Miller has already been denied her right to participate in two municipal caucus' in July 2015 and January 2016. Nevertheless, the statutes in question, C.G.S. § 9-60 *et seq.*, have been cited by the Defendant as giving him authority to arbitrarily, and without due process, determine that the Ms. Miller may not affiliate with the party of her choice, thereby denying her the ability to participate in the upcoming 2016 Republican presidential primary election.

Unfortunately, the trial court, applying a lesser scrutiny standard, found that Ms. Miller's right to vote and to freely associate were not unduly burdened when a "hearing committee" of two declared her disloyal and stripped her of her ability to cast a vote in a Republican Party primary for well over two years and counting. These statutes, and the Defendant's wrongful and arbitrary application of them to deprive the Plaintiff of her ability to participate in this fundamental, and most important American civil process, should be immediately addressed by this Court. For these reasons, Ms. Miller respectfully asks that this Court reverse the trial court's decision and recognize C.G.S. §§ 9-60 and 9-61 for what they are--the archaic, unconstitutional relics of Connecticut's past, applied here in an unconstitutional manner.

1

## **STATEMENT OF FACTS AND PROCEEDINGS COMMON TO ALL CLAIMS**

Jane Miller ("Plaintiff" or "Ms. Miller") has been a resident of Brookfield, Connecticut ("Brookfield") since 1992, and she first registered to join the Republican Party approximately 14 years ago in 2002.  Memorandum of Decision dated August 18, 2015 ("Mem. Dec.") at 2; Hearing Transcript dated July 27, 2015 ("HT") at 62:24. Defendant Thomas Dunkerton ("Defendant") is the Republican Registrar of Voters for Brookfield.  HT at 10:1-11.

In 2009, the Brookfield Republican Party nominated Ms. Miller as a candidate for a seat on the Brookfield Board of Education.  Mem. Dec. at 2; HT at 63:3-5.  Ms. Miller was elected to the Board of Education, and she served a full four-year term.  Mem. Dec. at 2; HT at 63:6-8.  When Ms. Miller sought reelection to the Board of Education in 2013, however, the Brookfield Republican Party declined to endorse her and made an announcement to that effect at its July 23, 2013 caucus.  Mem. Dec. at 2-3; HT at 63:6-8; 64:3-6.  This Brookfield Republican Party caucus was held on the same day as the Brookfield Democratic caucus.  Mem. Dec. at 3; HT at 64:23-25.  Ms. Miller attended the Brookfield Republican Party caucus, and did not attend the Brookfield Democratic Party caucus.  Mem. Dec. at 2; HT at 64:7-8 and 64:23-27.

Because Ms. Miller wanted to continue serving her community as a public official even though she did not win the endorsement of the Brookfield Republican Party for reelection to the Board of Education, she sought a seat on the Board of Finance.  Mem. Dec. at 3; HT at 66:3-5.  She ran for this seat as an unaffiliated candidate on the

Democratic line because, as stated above, the Republican Party would not endorse her. Mem. Dec. at 3; HT at 66:3-5.

On July 24, 2013, Ms. Miller changed her party affiliation to "Unaffiliated," deliberately choosing not to join the Democratic Party or any other political party.  Mem. Dec. at 3; HT at 65:22-27.  The Brookfield Democratic Party endorsed Ms. Miller in her bid for a seat on the Board of Finance.  Mem. Dec. at 3; HT at 66:3-10.  Ms. Miller was not elected to the Brookfield Board of Finance.  Mem. Dec. at 3; HT at 66:13-14.  On December 3, 2013, Ms. Miller submitted a voter registration card to the Defendant in his capacity as the Brookfield Republican Registrar of Voters.  HT 20:11-14.  The form was accepted by the Defendant on December 4, 2013, who then mailed the statutory notice of a change in registration on December 5, 2013.  *Id.*  As of this date, December 5, 2015, Ms. Miller was reinstated on the rolls of the Republican Party. *Id.* at 21:1-3.  Ms. Miller has always supported the principles and values of the Republican Party, even during the brief six month period when she was registered as "Unaffiliated."  *Id.* at 73:19-24.

At the winter 2015 Brookfield Republican Party Town Committee meeting, the party members in attendance discussed forcibly disaffiliating Ms. Miller from the Republican Party pursuant to C.G.S. §§ 9-60 and 9-61.  *Id.* at 108:18-109:1.  When asked whether the group approved of Ms. Miller's forcible disaffiliation under C.G.S. §§ 9-60 and 9-61, the members of the Brookfield Republican Town Committee informed Defendant "this is entirely [your] decision, it is not ours."  *Id.* at 109:5-6.  Matthew Grimes, the Chairman of the Brookfield Republican Town Committee, also told Defendant that initiating a hearing to consider Ms. Miller's forcible disaffiliation from the

3

party was a "decision [Defendant] need[ed] to make . . . absolutely independently of [Mr. Grimes] and the town committee." *Id.* at 109:10-11.

On March 19, 2015, Defendant sent Ms. Miller a citation telling her to appear before him and Mr. Grimes to show cause as to why she should not be disaffiliated from the Republican Party. Mem. Dec. at 3-4; HT at 16:16-18. Defendant and Mr. Grimes presided over this hearing. Mem. Dec. at 4. After the hearing, the Defendant and Mr. Grimes issued an unsigned decision finding that there was "reasonable proof" that Plaintiff was "a candidate for office under the designation of another party" and was "actively affiliated" with the Democratic Party. Mem. Dec. at 5 and Exhibit 4; HT at 26:24-28:6. They did not find "reasonable proof" that Ms. Miller had "knowingly [been] a candidate at any primary or caucus of another party," even though they had initially accused Ms. Miller of this act. HT at 142:9-21. Aside from Ms. Miller, neither the Defendant nor any of his predecessors, has ever invoked the procedure set forth in C.G.S. § 9-60 *et seq.* against anyone, let alone actually disaffiliated anyone from the Republican Party. HT at 138:23-139:2. Defendant notified Ms. Miller by letter dated April 23, 2015 that her name would be erased from the Brookfield Republican Party's enrollment list. Mem. Dec. at 5.

Pursuant to C.G.S. § 9-63, on April 30, 2015, Ms. Miller brought a petition to the Superior Court to establish that her name had unjustly and improperly been removed from the Republican Party enrollment list and to obtain an order directing Defendant to restore her name to this list. Appendix ("Appx.") at A4. On August 18, 2015, Superior Court Judge Anthony D. Truglia, Jr. issued an opinion denying Ms. Miller's petition. Appx. at 10. On September 8, 2015, Ms. Miller appealed this decision to the Appellate

Court.  Appx. at A25.  On January 12, 2016, pursuant to C.G.S. § 65-1, this Court transferred the appeal from the Appellate Court.

## STANDARD OF REVIEW COMMON TO ALL CLAIMS

The proceeding adjudicated by the Superior Court in this matter was "an action in the nature of a mandamus to compel the performance of a public duty." *Kiernan v. Borst*, 126 A.2d 569, 571 (Conn. 1956) (cause of action to compel registrar to re-enroll voter in party is a mandamus action). This Court reviews lower court mandamus decisions for abuse of discretion. *See Jalowiec Realty Assocs., L.P. v. Planning & Zoning Comm'n*, 278 Conn. 408, 412 (Conn. 2006). While this Court "must make every reasonable presumption in favor of [a lower court's] action," it must "overturn a lower court's judgment if it has committed a clear error or if it has misconceived the law." *Id.*

## ARGUMENT

### I.  THE PROPER STANDARD TO APPLY IN DETERMINING THE CONSTITUTIONALITY OF § 9-61 IS STRICT SCRUTINY

"[T]he rigorousness of [a court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  To determine the appropriate level of review, "[a] court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the precise interests put forward by the state as justifications for the burden imposed by the state's rule." *Id.*  "[W]hen [a plaintiff's] rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance." *Id.* (internal citations and quotations omitted).  Only when a regulation's encroachments on a plaintiff's rights are not "severe" and impose nothing more than "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters is a lower level of review appropriate. *Id.*

In addressing the Plaintiff's claim that § 9-61 is an unconstitutional burden on her right of association and right to vote, the trial court incorrectly determined that strict scrutiny was not the proper standard to apply.  In so holding, the trial court found that because the restrictions upon Ms. Miller's constitutional rights were "reasonable" and "nondiscriminatory," citing *Mazzucco v. Verderame*, a lesser level of scrutiny should be applied.  For the following reasons, the trial court should have applied the strict scrutiny

standard to determine whether the statutes in question impermissibly infringe on Ms.
Miller's constitutional rights.

First, strict scrutiny should apply to C.G.S. § 9-61 because the restrictions it
imposes on the rights of those affected are not "reasonable." *Burdick*, 504 U.S. at 434.
In *Nagler v. Stiles*, for instance, the District of New Jersey struck down a regulation that
"require[d] two successive primaries to elapse before a voter [could] change his party
affiliation," describing this regulation "as being patently over-broad in scope." 343 F.
Supp. 415, 418 (D.N.J. 1972). The court in *Nagler* , thus, found a restriction on party
membership lasting the same amount of time as that imposed by C.G.S. § 9-61 (i.e. two
years)[1] to be "both ***unreasonable*** and excessive." *Id.* (emphasis added); *see also Yale
v. Curvin*, 345 F. Supp. 447, 452 (D.R.I. 1972) (law preventing voters from changing
party affiliation for twenty-six months was "***unreasonable*** and excessive") (emphasis
added).

Second, strict scrutiny should also apply to C.G.S. § 9-61 because application of
this provision results in "severe" encroachments on the rights of those affected.
*Burdick*, 504 U.S. at 434. The Supreme Court has found various other restrictions, less
onerous than those at issue here, on the rights of citizens to affiliate with political
parties, to be substantial abridgements of associational rights. In *Kusper v. Pontikes*,

---

[1] C.G.S. § 9-61 provides that the period of disaffiliation from the political party "shall be
effective for a period of two years from the date of" the acts giving rise to the
disenrollment. During the hearing before the trial court, the Defendant acknowledged
the two-year limit on the disaffiliation under § 9-61 and even agreed that regardless of
what action or inaction the trial court took, he would have to reinstate Ms. Miller
sometime in November 2015—two years from the date of the alleged bad acts for which
she was disaffiliated. Appx. at A59; HT at 48:8-12. To this date, Ms. Miller has not
been re-enrolled in the Republican Party despite the fact that it has been more than two
years since the acts Defendant cited as giving rise to her disaffiliation.

for instance, the Supreme Court held that where "less drastic means" were available,

the "legitimate interest of [the state] in preventing 'raiding' [could not] justify" a state law

preventing a voter from casting a primary ballot for 23 months after voting in a different

party's primary (i.e. one month *less* than the statutory provision at issue in our case).

414 U.S. 51, 61 (1973).  The Court observed that the 23 month disqualification from

primary voting "substantially abridged" the voter's ability to associate effectively with the

party of her choice.  *Id.* at 58.  This was so, even though the Court acknowledged that –

unlike the statutory provision at issue in our case – the law they reviewed in *Kusper* did

not "deprive [voters] of all opportunities to associate with the political party of their

choice," but rather placed restrictions solely on the voter's right to vote in primaries.  *Id.*

at 58.  Given that C.G.S. § 9-61 encroaches upon Ms. Miller's rights in ways far more

severe than those found to "substantially abridge[]" the plaintiff's rights in *Kusper*, strict

scrutiny should apply to C.G.S. § 9-61, with the burden then falling on Defendant to

establish that C.G.S. § 9-61's restrictions were "narrowly drawn to advance a state

interest of compelling importance." *Burdick*, 504 U.S. at 434.

Strict scrutiny should also have been applied as C.G.S. §§ 9-60 and 9-61 are

designed to be used punitively against "disloyal" party members.  Indeed, the Defendant

freely admitted that he believes the forcible disaffiliation provisions in C.G.S. §§ 9-60

and 9-61 have, as their purpose, the "punishment" of party members for prior acts of

perceived party disloyalty:

> Q: . . . You're not keeping her out of the Republican Party to be punitive of Ms.
> Miller, are you?

A:  Well, if -- if the statute requires punishment, is that punitive, I would say it is.

Q . . . "[A]re you punishing her for what you deem to be her prior acts? . . .

A:  . . .Yes.

Appx. A59; HT at 48:13-21.  Indeed, in invalidating as unconstitutional an earlier version of C.G.S. § 9-61 (which has since been amended to, among other things, make disaffiliation discretionary rather than mandatory), the Superior Court observed that "[t]he only conceivable purpose of the mandatory disaffiliation act is to punish the disloyal party member who runs for office under a different party label." *Mazzucco,* NO. CV 96-0382136-S, 1996 Conn. Super. LEXIS 752, at *9 (internal quotations omitted). The court in *Mazzucco* further observed that "[t]he legislative history of the act indicate[d] its intended effect was to punish the person" thought to be disloyal. *Id.* (internal quotations omitted).  In light of this, the court rejected the defendants' claim that C.G.S. § 9-61 served the compelling purposes of "provid[ing] political stability and prevent[ing] voter raiding"  and instead found that C.G.S. § 9-61's sole purpose to punish disloyal voters was insufficient to save the law even without applying strict scrutiny. *Id.* at *8-9.  The court also found that the defendants had failed to show that the purpose behind C.G.S. § 9-61 "could not be achieved by less restrictive means," and it would have struck down the law for that reason even if the purpose for the law had been legitimate. *Id.* at *9.

Likewise, in *Fand v. Legnard*, the court also found an even earlier version of C.G.S. § 9-61 unconstitutional.  NO. 31 60 63, 1994 Conn. Super. LEXIS 2722, at *25 (Conn. Super. Ct. Oct. 31, 1994).  In *Fand*, the court held that strict scrutiny did apply to C.G.S. § 9-61, since "[t]he erasure of [the plaintiff's] name from the Republican Party

enrollment list is persuasive of a substantial impingement upon his freedom of association with that party since it clearly prohibits him from participating in the political process of that party." *Id.* at *22.  Additionally, in *Mandanici v. Fischer,* Superior Court, judicial District of Fairfield, Docket No. 21 36 18 (February 22, 1984, *Burdon, J*) (10 Conn. Law Trib.  July 2, 1984), the Superior Court also overturned an earlier version of C.G.S. § 9-61.  In *Mandanici*, the court observed that "punishment is not a legitimate state purpose for substantially infringing upon the plaintiff's associational rights." *Id.* at *18.  The court went further, opining "[i]t is doubtful whether any purpose discussed in this opinion could justify the interference with the person's associational rights to vote for a two-year period in local, state, or federal primaries" *Id.*  The weight of this authority militates strongly in favor of the conclusion that strict scrutiny ought to apply to C.G.S. § 9-61.

II.  **THE SUPERIOR COURT ERRED IN HOLDING THAT FORCIBLY DISAFFILIATING MS. MILLER FROM THE REPUBLICAN PARTY DID NOT IMPERMISSIBLY BURDEN HER RIGHT TO FREEDOM OF ASSOCIATION UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

The United States Supreme Court has held that "the First Amendment [to the United States Constitution] protects an individual's right to join groups and associate with others holding similar beliefs." *Dawson v. Delaware*, 503 U.S. 159, 163 (1991).[2]

Indeed, "[t]here can no longer be any doubt that freedom to associate with others for the

_____

[2] The "freedom of association protected by the First Amendment [is] made applicable to the States through the Fourteenth Amendment." *Elfbrandt v. Russell*, 384 U.S. 11, 18 (1966).  Moreover, "state delegation to a [political] party of the power to fix the qualifications of primary elections is delegation of a state function that may make the party's action the action of the State," for the purposes of the application of the United States Constitution's proscriptions against a state's efforts to deprive its citizens of voting rights. *Smith v. Allwright*, 321 U.S. 649, 660 (1944).

common advancement of political beliefs and ideas is . . . activity protected by" this Amendment. *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973) (internal citations and quotations omitted). The Court has even gone so far as to describe "[t]he right to associate with the political party of one's choice" as "an integral part of [our] basic constitutional freedom." *Id.* at 57.[3]

The trial court supported its decision to reject Ms. Miller's claim that Defendant's actions impermissibly violated her right to freedom of association by reasoning that re-enrolling Ms. Miller as a Republican would impermissibly violate the associational rights of the Republican Party.[4] *See* Appx. at A20; Mem. Dec. at 11 ("The constitutionally

_____

[3] The Superior Court framed its discussion of whether Defendant violated Ms. Miller's constitutional rights to freedom of association by quoting *Flewellyn v. Hempstead*, 703 A.2d 1177, 1179 (Conn. App. Ct. 1997). This case, the court noted, stands for the idea that "political parties *generally* are free to conduct their internal affairs free from judicial supervision. . . .," a principle that the court said "serves the public interest by allowing the political process to operate without undue interference." *Id.* (internal quotations omitted) (emphasis added). In light of this principle, the court noted that "judicial intervention in [the selection of candidates] traditionally has been approached with great caution and restraint." 703 A.2d 1177, 1179 *Flewellyn* expressed this principle in a case in which the court was called upon to decide which of two competing candidates was properly nominated for a particular office, not a case, such as ours, in which the right of a voter to join a political party is in question. *Id.* at 1178. Arguably, the principle upheld in *Flewellyn* was to allow the much larger electorate to decide the correct candidate, rather than the small judiciary. Defendant's actions in this case shrink the electorate in an arbitrary manner, going against this principle. Furthermore, *Flewellyn* did not involve a conflict between a voter's associational rights and the associational rights of a political party, as does the instant case. Thus, the principles expressed in *Flewellyn*, while perhaps generally true, have no bearing here. *See Kusper v. Pontikes*, 414 U.S. 51, 57 (1973) (Although "administration of the electoral process is a matter that the Constitution largely entrusts to the States[,] in . . . setting qualifications for voters, the States may not infringe upon basic constitutional protections.").

[4] The Superior Court supported its decision upholding C.G.S. § 9-61 by citing to *Campbell v. Bysiewicz* for the proposition that Ms. Miller did not have an unlimited right to be a *candidate* of a specific party. 242 F. Supp. 2d 164, 171 (2003). Ms. Miller does not ask this Court to vindicate her rights to run as a candidate, however, but merely to protect her "right to associate with the political party of [her] choice" as a *member* with rights to vote in party primaries. *Kusper*, 414 U.S. at 57.

protected right of association asserted by the plaintiff, in other words, applies equally to the defendant.").  This reasoning was in error, as the record clearly shows that Ms. Miller's forcible disaffiliation from the Republican Party was not motivated by, or the result of, the desire of party members to define the scope of their association.  Notably, when asked whether the group encouraged Ms. Miller's forcible disaffiliation, the members of the Brookfield Republican Town Committee informed Defendant "this is entirely [your] decision, it is not ours."  HT at  109:4-6.  Mr. Dunkerton also testified that no one else asked him to "take [t?]his on"  and that he invoked C.G.S. §§ 9-60 and 9-61 independently.  *Id.* at 26:6-14.

Even Matthew Grimes, the Chairman of the Brookfield Republican Town Committee who, with Defendant, presided over the hearing leading to Ms. Miller's forcible disaffiliation, told Defendant that initiating the hearing was a "decision [Defendant] need[ed] to make . . . absolutely independently of [Grimes] and the town committee."  HT 109:9-11.  Indeed, the record shows that Ms. Miller's forcible disaffiliation was motivated by the desire of Defendant alone, or at most a small cadre of the party, to exact punishment against Ms. Miller for temporarily suspending her registration as a Republican.

Q: . . . You're not keeping her out of the Republican Party to be punitive of Ms. Miller, are you?

A:  Well, if -- if the statute requires punishment, is that punitive, I would say it is.

Q . . . "[A]re you punishing her for what you deem to be her prior acts? . . .

A:  . . .Yes.

Appx. at A59; HT at 48:13-21.  When given  the opportunity to present evidence and witnesses concerning how other members of the Brookfield Republican Party wanted Ms. Miller thrown out of the Party, they were either unable or unwilling to do so.  In fact, Mr. Dunkerton readily admitted under oath at the hearing that at least two other current members of the Brookfield Republican Party who ran on other party lines against Republican candidates, won their elected seats, and then were readmitted back into the Republican party, including Mr. Grimes who presided at the hearing to dis-affiliate Ms. Miller.  HT 56:24-60:19.  Clearly, the associational rights of the Republican Party are not at issue here, but rather the whims and prejudices of Defendant against Ms. Miller.

Connecticut courts have astutely observed that the expressed opinion of a single member of a political party concerning a decision to forcibly disaffiliate a voter is not itself an expression of the preference of the party as a whole to expel that person, even if the party member expressing the opinion is a party official.  *Mazzucco v. Verderame,* NO. CV 96-0382136-S, 1996 Conn. Super. LEXIS 752, at *5-6 (Conn. Super. Ct. Mar. 22, 1996) (court unconvinced that preference of party to disaffiliate voter can be discerned solely from opinion of party Town Chairman, since such preference must be "ascertained from a Town Committee meeting at a minimum and a caucus at a maximum").  Also, neither the Connecticut state nor the Brookfield local Republican Party rules call for the forcible disaffiliation of voters.  *See* Appx. A63.  This further underscores the notion that Ms. Miller's disaffiliation should not be viewed as reflecting the associational preference of the Republican Party.  *Mazzucco,* NO. CV 96-0382136-S, 1996 Conn. Super. LEXIS 752, at *9-10 (party Town Chairman's decision to disaffiliate voter using § 9-61 did not represent preference of party since "rules of the

[party] contain[ed] no such disaffiliation" provision).  In light of the above, the associational rights of the Republican Party would simply not be implicated by a decision of this Court ordering Defendant to reenroll Ms. Miller in the party, as the party as a whole has no objection to associating with Ms. Miller, or others who change their party affiliations in order to better serve their community.

The trial court relied exclusively on  *Tashjian v. Republican Party*, 479 U.S. 208 (1986) in support of the notion that Ms. Miller's associational rights should give way to the purported rights of the Republican Party to "determine its own membership qualifications."  *See* Appx. A21; Mem. Dec. at 12.  Specifically, the trial court quotes extensively from footnote 6 of the *Tashjian* decision, which therein relies on four distinct cases, none of which, however, stand for the proposition that individual party officials may arbitrarily disaffiliate members of the party. *See* Appx. at A21-22; Mem. Dec. at. 12-13.  In *Tashjian*, the Untied States Supreme Court was called upon to decide whether an older Connecticut state Republican Party rule permitting the participation of unaffiliated voters in state primaries would govern the party's primary process in spite of a conflicting state law that required primary voters to be affiliated with the party for which they sought to cast a primary vote.  479 U.S. at 210.  In siding with the Republican Party, the court in *Tashjian* upheld the right of a political party to "**broaden the base of public participation in and support for its activities**," rather than – as here – to restrict such participation.  *Id*. at 214 (emphasis added). This obvious distinction is just one of the many that arise upon a further examination of *Tashjian* and the cases cited in that decision.

The first case cited, *Rosario v. Rockefeller*, 410 U.S. 752 (1973), involved a New York statute requiring voters to register at least 30 days before the general election to vote in the next party primary.  The plaintiffs alleged they were disenfranchised by this requirement, but the statue was upheld with the court stating, "if their plight can be characterized as disenfranchisement at all, it was not caused by § 186, but by their own failure to take timely steps to effect their enrollment." *Id.* at 758. In fact, the Court went on to say that "[s]ince they could have enrolled in a party in time to participate in the June 1972 primary, § 186 did not constitute a ban on their freedom of association, but merely a time limitation on when they had to act in order to participate in their chosen party's next primary." *Id.* Thus, the statute analyzed is very different than the statute, and its enforcement, in this case. Defendants' actions clearly "constitute a ban" on Mrs. Miller's right to freedom of association, as she is prevented from voting in the primary of her chosen political party, despite no evidence she has ever espoused any ideals that differ from that party.

*Nader v. Schaffer*, 417 F. Supp. 837 (D. Conn. 1976) was also cited by the Court in *Tashjian*.  In this case, seemingly more congruent to the facts of the instant case, plaintiffs refused to affiliate with any political party, and challenged a Connecticut statute which, at the time, allowed only those who were registered with a political party to vote in the primary, regardless of the party's desire.  They alleged that by forcing them to affiliate in order to vote in primaries, the statutes infringed on their freedom of association.  A key distinction between this case and the instant case is that Mrs. Miller *does* wish to register with the Republican Party, and has been so registered for nearly 20 years, yet her right to vote in the primaries has been taken through the questionable

16

application of statutes that the court in *Nader* acknowledged were never actually used. *Id.* at 844 ("The voter's name, however, may be erased from the party's enrollment list on a proper showing that he does not support the party's principles or candidates; but in actual practice these statutes are not used.") While the court does recognize the ability of the state and party to regulate the ability to vote in primaries to prevent 'raiding' by those with adverse political principles, Mrs. Miller has never been accused of such "raiding activities."

Two other cases cited in *Tashjian, Democratic Party of United States v. Wis.,* 450 U.S. 107 (1981) and *Cousins v. Wigoda,* 419 U.S. 477 (1975), dealt with the ability of the national political party organizations to design their own rules with regard to who may vote in national conventions (as the convention vote is generally controlled by the primary vote of the state, these cases therefore involve the same elections Mrs. Miller is being prevented from participating in). In both cases, the right of the national party apparatus to determine rules for its internal governing structure were upheld, but neither case stands for the proposition that registered members of a party can be prevented from voting at the discriminatory whim of a local official.

For these reasons *Tashjian* is inapplicable to the present set of facts, despite the trial court relying on it to hold that a party's rights of association are more valuable than an individuals. Here, Defendant's forcible disaffiliation of Ms. Miller from the Republican Party encroaches upon Ms. Miller's rights to associate with the party of her choosing and her right to vote, despite the fact that she has been a registered Republican for nearly 20 years, with only a brief hiatus (similar to that taken by Defendant Grimes when he established a competing political party, "A Brookfield Party"). Appx. at A60-61; HT at

17

62:18-20 and 103:21-104:22.  No case cited by the court supports the notion that an individual's right to associate with a political party, and thereby to vote in that party's primary, can be taken away arbitrarily. States are able to regulate elections, certainly, but stripping an individual of their rights is very different from requiring registration 30 days before an election in order to vote. Finally, even the federal court in *Nader* never expected the statutes at issue here to be used to remove individuals from a political party. Respectfully, we submit that the trial court fundamentally misunderstood the holding in *Tashjian*, and its decision should be reversed.

### III.   THE TRIAL COURT CLEARLY ERRED IN HOLDING THAT FORCIBLY DISAFFILIATING PLAINTIFF FROM THE REPUBLICAN PARTY DID NOT IMPERMISSIBLY BURDEN HER FUNDAMENTAL RIGHT TO VOTE

The United States Supreme Court has explained that "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).  Indeed, "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *Id.* The United States Constitution secures for the people the right to vote for candidates seeking public office. *See, e.g., United States v. Classic*, 313 U.S. 299, 315 (1941) (identifying "right of qualified voters within a state to cast their ballots and have them counted at Congressional elections" as "secured by the Constitution"); *In re Quarles*, 158 U.S. 532, 535 (1895) ("Among the rights and privileges, which have been recognized by this court to be secured to citizens of the United States by the Constitution, are . . . the right to vote for presidential electors or members of Congress"); *see also* U.S. CONST. art. I, § 2 ("The House of Representatives shall be composed of Members chosen every second Year **by the People** . . .") (emphasis added); U.S.

CONST. amend. XVII ("The Senate of the United States shall be composed of two

Senators from each State, **elected by the people** thereof . . .") (emphasis added).  This

right "undeniably" applies both to state and federal elections.  *Reynolds v. Sims*, 377

U.S. 533, 554 (1964) .  Given that the "right to vote" is understood to be "the guardian of

all other rights," it is considered a fundamental right.  *Zapata v. Burns*, 529 A.2d 1276,

1279 (Conn. 1987).

  The trial court agreed that a fundamental right to vote was secured by the United

States Constitution, but found that this right is applicable only to general elections and

that it does not extend to primaries.  Appx. at A21; Mem. Dec. at 12.  ("The court is not

aware of, nor does the plaintiff cite to, any authority for the proposition that participation

in a party primary or caucus is a fundamental right.").[5] However, a review of the relevant

precedent leaves no doubt that American courts recognize a fundamental,

Constitutionally protected right to vote in primaries.  The Supreme Court has held that

the "right of participation [in a primary] is protected just as is the right to vote at the

---

[5] *Timmons v. Twin Cities Area New Party* was the only authority that the Superior Court relied upon in support of its holding that the fundamental right to vote does not extend to primaries.  520 U.S. 351 (1997).  In *Timmons,* the Supreme Court upheld a state law prohibiting **candidates** from appearing on the ballot as the candidate of more than one party.  *Id.* at 353-54.  The case did not address restrictions on the rights of **voters**, however, and therefore is inapplicable to the issues to be decided in this case.  "The state's interest in preserving a vigorous and competitive two-party system is fostered by the requirement that **candidates** demonstrate a certain loyalty and attachment to the party in whose primary they are running; the same cannot be said of **voters**, however, who should be freer to demonstrate their changes in political attitude by voting for popular candidates or against unpopular candidates in any party's primary election."  *Bendinger v. Ogilvie*, 335 F. Supp. 572, 576 (N.D. Ill. 1971); *see also Yale v. Curvin*, 345 F. Supp. 447, 452 (D.R.I. 1972) (where "state's interest is weighed against the constitutional claims of political party **members**, the outcome has been different" from instances where party candidates are burdened) (emphasis in original).  Ms. Miller asks this Court to vindicate her rights as a party **member** and **voter**, not as a party **candidate**, so *Timmon*s is, thus, inapposite to this Court's analysis of her case.

[general] election" under circumstances where "a state . . . changes the mode of choice [of candidates] from a single step, a general election, to two, of which the first is the choice at a primary of those candidates from whom, as a second step, the [winner] is to be chosen at the election." *United States v. Classic*, 313 U.S. 299, 316-17 (1941); *see also Smith v. Allwright*, 321 U.S. 649, 661-62 (1944) ("It may now be taken as a postulate that the right to vote in . . . a primary for the nomination of candidates without discrimination by the State, like the right to vote in a general election, is a right secured by the Constitution."); *Tashjian*, 479 U.S. at 227 (goal of Seventeenth Amendment to United States Constitution to secure to the people the right to elect United States Senators "applicable to every stage in the selection process," including primaries).

Indeed, "the right to associate with the political party of one's choice," described more fully in Section II *supra*, implies that there must also be a corresponding right to vote in the party's primary. *See Kusper v. Pontikes*, 414 U.S. 51, 57 (1973). The Supreme Court has held that the right to associate with a chosen political party would have little meaning without the corresponding right to participate in the "basic function of [the] political party[, which] is to select the candidates for public office to be offered to the voters at general elections." *Id. at* 58. The Court recognized that "[a] prime objective of most voters in associating themselves with a particular party must surely be to gain a voice in that selection process." *Id.* In light of this, the Court has struck down laws barring citizens from voting in primaries for periods even shorter than the two year disqualification period prescribed by C.G.S. § 9-61, holding that "[b]y preventing the [voter] from participating at all in . . . primary elections during the statutory period, the [law] deprived her of any voice in choosing the party's candidates, and thus *substantially*

*abridged* her ability to associate effectively with the party of her choice." *Id.* (emphasis added) (law barring voters from casting a ballot in a primary for 23 months held unconstitutional).

Under state law, Connecticut political parties conduct "closed" primaries, in which only persons enrolled as members of a party are allowed to vote for that party's nominees for general election.[6] As a consequence of this closed system, when Defendant removed Ms. Miller's name from the Republican Party rolls, he disqualified Ms. Miller from voting in any Connecticut Republican primary to select the party's nominees for all offices. Included in this ban are both primaries for selecting nominees running to become local or state officials, such as Board of Education members and state representatives, as well as primaries for selecting nominees running to become federal officials, such as members of the United States House of Representatives or Electors to the Electoral College, which in turn selects the President of the United States.

As a result of her forcible disaffiliation from the Republican Party, Ms. Miller has already been unjustly precluded from casting her vote in several Republican primaries and caucuses, including two municipal caucuses held in July 2015 and January 2016 as well as the March 2016 Brookfield Republican Town primary. Moreover, absent an order reversing Ms. Miller's forcible disaffiliation, Ms. Miller will remain ineligible to

---

[6] See C.G.S. § 9-431("(a) No person shall be permitted to vote at a primary of a party unless (1) he is on the last-completed enrollment list of such party . . . , or (2) if authorized by the state rules of such party filed pursuant to section 9-374, he is an unaffiliated elector. . ."). The state rules of the Connecticut Republican party do not permit unaffiliated electors to vote in the Republican primary elections. Appx. at A63.

participate in future Republican primaries, including the important , and potentially historic April 26, 2016 Republican presidential primary.

Nominees selected in the primaries of Connecticut political parties are entitled to have their names placed on the official ballots used in the general election, a privilege giving them a significant advantage over other candidates seeking election, who must undergo the more onerous process of obtaining signatures from state voters for use in petitioning the Secretary of the State to add their names to the ballot.  *See* C.G.S. § 9-379.[7]  As a practical matter then, it is quite likely that any candidate who fails to be nominated by their party in a primary election will stand almost no chance of winning election to the office that they seek. *United States Term Limits v. Thornton*, 514 U.S. 779, 830-31 (1995) ("write-in candidates have only a slight chance of victory"). Republican primaries and caucuses are, thus, "an integral part of the election machinery," and Ms. Miller's right to participate in them is "protected just as is the right to vote at the [general] election."  *United States v. Classic*, 313 U.S. at 318.

In light of the above, the restrictions that C.G.S. § 9-61 places on Ms. Miller's right to vote are particularly severe, since Defendant's application of the law precludes Ms. Miller in many instances from having any chance to effectively support her chosen candidates for public office at the ballot box.  This is yet another reason that this Court should subject C.G.S. § 9-61 to strict scrutiny. *Burdick*, 504 U.S. at 433.  As noted in Section I, *supra*, the state does not even have a legitimate, let alone compelling, interest

---

[7] C.G.S. § 9-379 provides: "No name of any candidate shall be printed on any official ballot at any election except the name of a candidate nominated by a major or minor party unless a nominating petition for such candidate is approved by the Secretary of the State as provided in sections 9-453a to 9-453p, inclusive."

in punishing persons thought to be disloyal to their party by forcible disaffiliation, the purpose that both Defendant and the court in *Mazzucco* believe is behind C.G.S. § 9-61. *See* Appx. A59; HT at 48:13-21;*Mazzucco,* NO. CV 96-0382136-S, 1996 Conn. Super. LEXIS 752, at *9. Indeed, restrictions on voting rights of the type imposed here actually work against the political stability interests that the state proffered, but that the *Mazzucco* court rejected, as compelling interests furthered by an earlier version of C.G.S. § 9-61. *Id.* at *9.

The United States District Court, District of Rhode Island in *Yale v. Curvin* explained why this is so. 345 F. Supp. at 452?. In this case, the court assessed the constitutionality of a law that "prohibit[ted] any person from voting in the primary of any political party . . . if, within the preceding 26 months, [that] person ha[d] voted in a primary . . . for a candidate of another political party . . ." *Id.* at 448. The court rejected the notion that this restriction preserved "multi-party system integrity," and described the myriad reasons that such an encroachment on the fundamental right to vote actually worked against the integrity of our political system. *Id.* at 52. First, the court explained that "[i]n these times of dominant national issues, evolving and changing with each shading of the international picture, it belies reality to ignore voters' shifting allegiances from one candidate to another rather than adherence to party lines." *Id.* at 451.

Then the court noted that the restriction "inhibit[ed] growth of third parties[,] penalize[d] independents who wish[ed] to join parties and vote in their primaries[,] place[d] a premium on old guard party regularity, and hinder[d] growth of diverse constituencies within a party." *Id.* at 452. Noting that the law ignored the fact that voters may desire to vote for one party in local elections and another party in federal elections,

the court concluded that "[a] voter ought not be required to hold himself bound to a single party on every level of government." *Id.* at 453 (internal quotations omitted).  For all of these reasons, the court held that the law in question was unconstitutional.  *See also Gordon v. Exec. Comm. of Democratic Party*, 335 F. Supp. 166, 169 (D.S.C. 1971) ("Our system of government is based on the consent of the governed, and such consent is only illusory when voters are prevented by artificial restrictions for significant periods of time from changing political parties even though events or the actions of elected representatives may have convinced the voter that a change in party allegiance is warranted.").

The two-year disqualification from primary voting imposed under C.G.S. § 9-60 *et seq.* undercuts the stability of our political system in all of the same ways that *Yale* and *Gordon* warned about.  It artificially distorts the popular will reflected in the outcome of primary elections by prohibiting voters, such as Ms. Miller, who would otherwise cast a ballot, from participating.  It ignores the fact that some voters may support the principles of a party on the federal level while choosing to support other parties, or – as is the case here – choosing to run for office independently of their preferred party, at the local level. It leaves to the arbitrary whim of old guard party officials, such as Defendant, the decision as to who is and who is not sufficiently loyal to the party and entitled to vote in its primary elections.  Finally, even if prohibiting voters suspected of party disloyalty from participating in primary elections did promote state interests in political stability, despite all of the above-mentioned reasons showing that it would not, a restriction of the duration at issue here – 2 years – is far from a narrowly tailored means to achieve that end.  A prohibition of this length on primary voting ignores the fact that "the principal

policies of the major parties change to some extent from year to year." *Williams v. Rhodes*, 393 U.S. 23, 33 (1968).

As a consequence, a party member may, in one election, exhibit signs of disloyalty sufficient to give grounds for forcible disaffiliation under C.G.S. § 9-61, but resume strong loyalty to the party if the party's principles evolve during the course of her disqualification from voting in the party's primaries.  Thus, a two-year period of disqualification from participation in party primaries imposes excessive burdens on the affected person's fundamental right to vote without a commensurate benefit in the form of increased levels of political stability.  It certainly makes such a disqualification much more severe. It certainly makes such a disqualification much more subject to self-serving and improper gamesmanship.  For these reasons, this Court should apply strict scrutiny to C.G.S. § 9-60 *et seq.* and rule the law unconstitutional on the grounds that it imposes an impermissible infringement on the fundamental voting rights of affected party members, without "be[ing] narrowly drawn to advance a state interest of compelling importance." *Burdick,* 504 U.S. at 434.

## CONCLUSION

For the reasons set forth herein, the decision of the Superior Court should be reversed, as the trial court abused its discretion in denying Ms. Miller's request for a writ of mandamus directing Defendant to restore her name to the enrollment list of the Brookfield Republican Party.  The Superior Court clearly erred in holding that C.G.S. § 9-60 *et seq.* does not impermissibly infringe upon the rights of those against whom it is applied to freely associate with the political party of their choice and to vote in that party's primary.  This Court should accordingly rule C.G.S. § 9-60 *et seq.* unconstitutional.

JANE MILLER
PLAINTIFF-APPELLANT


By_____
    Joseph M. Pastore III ct11431
    Nathan Zezula ct27936
    Pastore & Dailey LLC
    4 High Ridge Park, Third Floor
    Stamford, CT 06905
    Phone: (203) 658-8454
    Fax: (203) 348-0852
    jpastore@psdlaw.net
    nzezula@psdlaw.net
    ************************************
    Susan Bysiewicz ct02242
    Pastore & Dailey LLC
    115 Glastonbury Blvd., Suite 100
    Glastonbury, CT 06033
    Phone: 203.658.8467
    sbysiewicz@psdlaw.net

    *Attorneys for Appellant*